UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00065-RSE

JOYCE D., widow of
TIMOTHY D., decedent                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*                                DEFENDANT

MEMORANDUM
OPINION AND ORDER

The Commissioner of Social Security denied Timothy D.'s ("Claimant's") applications for a period of disability and disability insurance benefits. Claimant, now deceased and whose interests are being further pursued by his widow Joyce D., seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Motion for Summary Judgment. (DN 14). The Commissioner has filed a Fact and Law Summary. (DN 17). The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12).

I. Background

Claimant Timothy D. passed away on September 9, 2021, at the age of 52. (DN 1-1, at PageID # 5).[1] Claimant was previously employed as a logistics coordinator, where he arranged flights and shipments, as well as occasionally helped load and unload shipments. (Tr. 40–41). Claimant had been unemployed since May 1, 2019, allegedly due to his disabling condition. (Tr.

---

1  As Claimant is now deceased, Claimant's widow, Joyce D., stands in as the named Claimant in this case.

42). Specifically, Claimant stated his main ailments were high blood pressure, Type 2 diabetes, neuropathy in his feet, and carpal tunnel in both of his hands. (Tr. 42). He had to stop working due to stability issues from his poor health and medication, which caused him to fall and prevented him from driving. (*Id.*).

On February 4, 2020, Claimant filed an application for disability insurance benefits under Title II, alleging disability beginning on May 1, 2019. (Tr. 153). The Social Security Administration originally denied Claimant's application on August 17, 2020 (Tr. 89) and upon reconsideration on November 6, 2020. (Tr. 94–96). After Claimant's request, Administrative Law Judge Jeffrey Eastham ("ALJ Eastham") conducted a telephonic hearing on August 2, 2021. (Tr. 36–50).[2] ALJ Eastham issued an unfavorable decision on August 13, 2021. (Tr. 23–31).

ALJ Eastham applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since the alleged onset of symptoms on May 1, 2019. (*Id.*). Second, Claimant suffers from the severe impairments of diabetes mellitus type II with peripheral neuropathy and obesity. (Tr. 25–26). Third, Claimant's conditions do not meet or medically equal the severity of a listed impairment from 20 C.F.R. § 404, Subpt. P, App'x 1. (Tr. 26). Additionally, Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [no] frequent reaching, handling, feeling, and fingering. The claimant can occasionally use foot controls with the bilateral lower extremities. The claimant can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. The claimant can frequently balance-as defined by the Selected Characteristics of Occupations, can frequently stoop, kneel, crouch, and crawl. The claimant must

2 Claimant consented to a telephonic hearing due to the COVID-19 pandemic. (Tr. 148–49).

2

avoid occasional concentrated exposure to extreme cold and vibrations. The claimant must avoid work at unprotected heights or working with or near dangerous machinery. The claimant cannot operate a motorized vehicle as a work requirement. The work cannot be fast paced production rate work.

(Tr. 26–29). Fourth, ALJ Eastham found the impairments prevent Claimant from performing past relevant work. (Tr. 29–30). Lastly, ALJ Eastham found, despite the RFC restrictions, there are still a significant number of jobs in the national economy Claimant could perform. (Tr. 30–31).

Due to these findings, ALJ Eastham deemed Claimant not disabled, as defined in the Social Security Act, from May 1, 2019 through the date of the decision. (Tr. 31). Claimant appealed ALJ Eastham's decision, and the Appeals Counsel declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant sought judicial review from this Court. (DN 1).

## II. Standard of Review

Administrative law judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal

3

citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III. Analysis

Claimant raises two challenges for review. First, Claimant argues ALJ Eastham erred by assigning improper weight to medical opinions and record evidence. (DN 14–1, at PageID # 409–11). Second, Claimant contends ALJ Eastham substituted his own judgment for the opinions of the medical professionals of record and that no medical opinions support his decision. (DN 1, at PageID # 3).

### 1. Did the ALJ properly weigh the medical opinions of record?

Claimant first argues ALJ Eastham failed to follow the "good reasons requirement" when he did not offer a specific justification for weight given to a treating-source opinion. (DN 14–1, at PageID # 412 (citing *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 536 (6th Cir. 2020))). Claimant takes issue with ALJ Eastham's skepticism regarding his treating physician's heavy

reliance on Claimant's subjective complaints. (*Id.*). Claimant also argues that the treating physician opinion was the only evaluation that opined on his inability to attend work regularly, so ALJ Eastham should have followed his recommendations over other evaluations. (*Id.*, at PageID # 413).

As the Commissioner points out, Claimant appears to rely on outdated regulations when arguing ALJ Eastham failed to supply a "good reason" for the weight he assigned to treating physician's opinions. (*See* DN 17, at PageID # 442). Because Claimant filed his claim for benefits after March 27, 2017, the new regulations for evaluating medical opinions apply. *See* 20 C.F.R. § 404.1520c (2017). Unlike the previous regulations, the new regulations provide the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those form [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).

Now, ALJs simply consider five factors when weighing medical evidence and opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) any other relevant consideration. 20 C.F.R. § 404.1520c(b). The administrative law judge need only explain how he considered the supportability and consistency factors, as they are most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinions will be. 20 C.F.R. § 404.1520c(c)(2). The administrative law judge may, but is not required to, explain how he considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he considered medical opinions. 20 C.F.R. § 404.1520c(b)(2)–(3).

ALJ Eastham adequately supplied explanations as to how he considered each medical

5

opinion. Dr. Patel, Claimant's treating physician, completed examination of Claimant on February 20, 2020. (Tr. 239–43). Following the exam, Dr. Patel found Claimant would be unable to sit for more than two hours at a time, stand for more than ten minutes at a time, walk for more than two hours in a full workday, and he would also have issues lifting or carrying more than ten pounds at a time. (*Id*.). Additionally, Dr. Patel found Claimant would have issues concentrating at work and would be absent more than four days per month. (Tr. 242).

ALJ Eastham found Dr. Patel's report unpersuasive due to issues with supportability and consistency. (Tr. 29). Specifically, ALJ Eastham noted how the effectiveness of medical treatment in improving Claimant's pain and diabetic control did not support Dr. Patel's opinion. (*Id*.). ALJ Eastham also recognized Nurse Bennett's exam, discussed below, showed Claimant to have "full upper and lower extremity strength, normal station and gait, and a full range of motion in the extremities," which is inconsistent with Dr. Patel's finding that Claimant could lift no more than ten pounds at a time. (*Id*.). Due to these inconsistencies, ALJ Eastham found Dr. Patel's testimony unpersuasive. (*Id*.) By discussing the inconsistency of Dr. Patel's report with other reports and how medical treatment records do not support Dr. Patel's findings, ALJ Eastham's opinion complied with the regulations.

Claimant argues ALJ Eastham failed to consider Dr. Patel's familiarity with Claimant, and, if he had considered their relationship, ALJ Eastham would have given Dr. Patel's opinion greater weight. (DN 14, at PageID # 412–13). As explained above, 20 C.F.R. § 404.1520c includes treatment relationship as a factor that ALJs may consider in their opinions. 20 C.F.R. § 404.1520c(3). However, the regulations do not demand ALJs explain their weighing of this factor in their decision. See 20 C.F.R. § 404.1520c(b)(2)–(3). As such, ALJ Eastham's explanation

regarding the supportability and consistency of Dr. Patel's opinion is sufficient under the regulations for finding the opinion unpersuasive.

In August 2020, Nurse Jessica Bennett performed a consultative examination on Claimant. (Tr. 287–91). Her findings on exam revealed Claimant had full range of motion on all peripheral joints and had no weaknesses. (Tr. 290). Nurse Bennett also opined Claimant may have trouble with moderate to heavy lifting, bending or squatting, and overhead work. (*Id.*).

ALJ Eastham found Nurse Bennett's report "partially persuasive" because it was only partially consistent with medical records and other exams. (Tr. 29). Specifically, while the evidence supported Nurse Bennett's findings on exam with regards to the extremity strength and range of motion, ALJ Eastham determined that Nurse Bennett's conclusion that Claimant has normal station and gait "did not take into account the environmental restrictions necessary for someone with diagnosed neuropathy." (Tr. 28). As such, ALJ Eastham sufficiently concluded that Nurse Bennett's exam was only partially supported by the evidence and thus partially persuasive. (*Id.*)

Lastly, ALJ Eastham considered the opinions of the state medical consultants: Dr. Olegano Ignacio and Dr. John Demos. (Tr. 51–60, 63–78). Dr. Ignacio determined Claimant could occasionally carry up to twenty pounds, could stand and walk about six hours in a workday, and could push or pull without limitations. (Tr. 57–58). Dr. Demos reviewed Claimant's limitations and largely agreed with Dr. Ignacio, adding only that Claimant would be unable to climb ladders, ropes, scaffolding, could frequently kneel or crouch, and should avoid exposure to hazards and wetness. (Tr. 71–74). Both Dr. Ignacio and Dr. Demos felt Dr. Patel's opinions underestimated Claimant's abilities. (Tr. 58, 75). Dr. Ignacio stated "[t]he assessment of the [sic] Dr. Patel (PCP)

is an underestimation of the true capability of the claimant with allegations more in the sensory system than motor system." (Tr. 58). Dr. Demos also adopted this view, characterizing Dr. Patel's restrictions as an "overestimate of the severity of the individual's restrictions/limitations." (Tr. 75).

ALJ Eastham found Dr. Ignacio and Dr. Demos' conclusions were most consistent with Claimant's medical history and, therefore, most compelling. (Tr. 29). The ALJ remarked Claimant's treatment history, which brought "constant improvement" in Claimant's lab tests for diabetes, and environmental restrictions, which were minimal due to his normal station and gait as well as full lower extremity strength, supported the consultants' conclusions. (*Id.*). ALJ Eastham also found the opinions persuasive due to "the experience of the State Agency consultants in their medical fields." (*Id.*) Although it is not clear from the record what specific medical fields ALJ Eastham refers to, state agency physicians are highly qualified "experts in Social Security disability evaluation[s]." 20 C.F.R. § 404.1513a(b)(1). As such, ALJs may rely on their opinions as substantial evidence. *See Martin v. Comm'r of Soc. Sec.*, No. 18-00005, 2018 WL 6169282, at *11 (N.D. Ohio Nov. 26, 2018).

By predominantly focusing on the consistency and supportability aspects of each opinion, ALJ Eastham fulfilled his requirements under the applicable regulations. The Court, accordingly, finds ALJ Eastham's weighing of the medical opinions is supported by substantial evidence in the record and complies with the regulations.

### 2. Is ALJ Eastham's RFC Determination supported by substantial evidence?

Claimant next contends ALJ Eastham improperly departed from the medical opinions of record when crafting the RFC. The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R.

8

§§ 416.945(a), 416.946. The administrative law judge bases his residual functional capacity finding on a review of the entire record, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). When the claimant disagrees with an administrative law judge's conclusion about functioning, regulations place the burden on the claimant to show how impairments affect functioning. 20 C.F.R. § 404.1512(c).

Specifically, Claimant argues ALJ Eastham failed to consider his obesity and neuropathy in determining his RFC, and "no medical evidence or opinion supports the ALJ's RFC." (DN 14-1, at PageID 413). The Commissioner counters Claimant's arguments fail to demonstrate reversible error. (DN 17, at PageID # 442). The Commissioner notes ALJ Eastham acknowledged Claimant's complaints of obesity, neuropathy, and potentially needing to miss work, but properly determined those complaints were not entirely consistent with the record evidence. (*Id.*). Treatment controlled Claimant's diabetes and neuropathy and gave him some relief from those conditions. (Tr. 269, 272, 286, 325, 335, 349).

Claimant's independent assessment of the record does not demonstrate ALJ Eastham's decision was contrary to the weight of the evidence. SSR 19-2p directs that ALJs must consider the limiting effects of obesity when assessing a person's RFC. 2019 WL 2374244, at *4. The regulations do not mandate a particular mode of analysis for such consideration. *See Parr v. Comm'r of Soc. Sec.*, No. 2:20-CV-13173, 2021 WL 5986920, at *14 (E.D. Mich. Aug. 31, 2021) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). Nor does SSR 19-2

9

relieve a claimant's burden of marshaling objective medical evidence and medical opinions establishing work-related limitations. *See, e.g., Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (W.D. Mich. 2009).   Thus, it remains Claimant's burden to show specifically how his obesity, in combination with other impairments, limited his abilities beyond the ALJ's RFC determination. *Id.*

Here, Claimant failed to show obesity's limiting effect on him, only stating ALJ Eastham "failed to account for the limiting effects of [Claimant's] obesity." (DN 14-1, at PageID # 413). However, ALJ Eastham stated that he considered Claimant's "obesity and the impact it has on his physical functioning has been considered in the formulation of the [RFC]." (Tr. 28). By failing to specifically demonstrate how obesity restricts his abilities beyond ALJ Eastham's RFC, the Court finds Claimant's challenge on this ground insufficient.

Claimant also argues neuropathy and obesity would have caused him to frequently miss work—up to four times per month—as well as needing excessive amounts of breaks when he was working. (*Id.*). However, as Commissioner highlights, Claimant fails to provide evidence of this required time away from work beyond Dr. Patel's opinion testimony, which ALJ Eastham found unpersuasive due to inconsistencies with Dr. Patel's treatment records as well as the other consultative exams. (DN 17, at PageID # 440; Tr. 29). The state agency consultants' conclusions, deemed persuasive by ALJ Eastham, did not determine these breaks and absences would be needed in Claimant's RFC. (Tr. 56-58, 71-74). Further, ALJ Eastham highlighted that the medical records show treatment has been effective in ameliorating the issues neuropathy has caused. (Tr. 28). Therefore, the record did support ALJ's Eastham to not include these absences in his RFC.

Claimant further contends that, rather than listening to Dr. Patel's opinion, ALJ Eastham

"play[ed] doctor" and replaced Dr. Patel's judgment with his own. (DN 14-1, at PageID # 412–13). The Commissioner responds that ALJ Eastham properly weighed the entire record in determining Claimant's RFC. (DN 17, at PageID # 439).

While Claimant is correct that an ALJ "may not substitute his own medical judgment for that of the treating physician," ALJ Eastham did not do so here. *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006). Instead, ALJ Eastman analyzed the entirety of Claimant's medical record. (Tr. 27–29). Rather than replacing the medical judgment of Dr. Patel with his own assessment, ALJ Eastham weighed Dr. Patel's testimony against the other available medical records, ultimately giving more weight to the other medical opinions and treatment results. (*Id.*).

While evidence may exist that would support a different finding, ALJ Eastham's determination was supported by substantial evidence in the record, and the undersigned finds no error.

## IV. Conclusion

For the above-stated reasons, the Court finds the medical records support the Commissioner's conclusions, and his decision complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

December 8, 2022

Copies:          Counsel of Record

11